IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ROBIN HAMMER,**
**Appellant Below, Petitioner**

FILED
**December 4, 2025**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-139**     (Bd. of Review Case No. 25-BOR-1169)

**WEST VIRGINIA DEPARTMENT OF HUMAN SERVICES,**
**BUREAU FOR FAMILY ASSISTANCE,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Robin Hammer appeals the February 27, 2025, decision from the West Virginia Office of Inspector General Board of Review ("BOR"). The BOR upheld the January 2025 termination of Mr. Hammer's Supplemental Nutrition Assistance Program ("SNAP") benefit by Respondent West Virginia Department of Human Services, Bureau for Family Assistance ("Department"). The Department filed a response.[1] Mr. Hammer filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the BOR's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Hammer receives SNAP benefits paid through the Department. In compliance with federal law, Department policy states that SNAP recipients are required to participate in periodic eligibility reviews, and that the failure of a recipient to complete the review will result in termination of benefits.[2]

---

[1] Mr. Hammer is self-represented. The Department is represented by Attorney General John B. McCuskey, Esq., and Assistant Attorney General Carl E. Hostler, Esq.

[2] Here, the controlling Department policy is West Virginia Income Maintenance Manual Chapter 1.2.2.B, which states:

> Periodic reviews of total eligibility for recipients are mandated by federal law. These are redeterminations and take place at specific intervals, depending on the program or Medicaid coverage group. Failure by the client to complete a redetermination will result in termination of benefits. If the client completes the redetermination process by the specified program

On December 16, 2024, the Department sent Mr. Hammer a SNAP eligibility review form along with a notice of a telephonic interview with a Department economic services worker for January 9, 2025. During the interview, Mr. Hammer disclosed to the economic services worker that his girlfriend had moved into his household. During that call, the Department worker told Mr. Hammer that additional information regarding his rent and income would be needed to complete the review. As a result, on January 10, 2025, the Department sent Mr. Hammer a Verification Checklist form, requesting that Mr. Hammer provide documentation to verify his rent expense, and proof of self-employment income and expenses. Mr. Hammer was directed to return the form and requested information no later than January 19, 2025. It is undisputed that Mr. Hammer timely submitted the requested information to the Department.[3]

However, around the same time, on January 17, 2025, the Department sent Mr. Hammer a notice of adverse decision, informing him that his SNAP benefits would be terminated after January 31, 2025, because he did not complete the eligibility review process. This notice was postmarked for that same day. According to testimony on behalf of the Department at the administrative hearing, Mr. Hammer was sent the January 17, 2025, notice because his case was tagged as "pending" in the Department's case management system; and that a "pending" designation is sent regardless of the reason, thirteen days prior to end of the month in which benefits cease.[4]

---

deadline(s) and remains eligible, benefits must be uninterrupted and received at approximately the same time.

The redetermination process involves basically the same activities described in the Application Process above. Eligibility system changes and client notification of any changes resulting from the redetermination conclude the process.

[3] As illustrated by the record, due to circumstances outside of Mr. Hammer's control, he could not readily access some or all of the income information that the Department requested by January 19, 2025, and as a result, the Department attributed Mr. Hammer's income as zero for purposes of his SNAP benefit calculation.

[4] West Virginia Income Maintenance Manual Chapter 9.3.1 provides that for qualifying adverse actions, the Department is required to give advance notice of an adverse action by ensuring that a notice is mailed to the affected client "at least [thirteen] days prior to the first day of the month in which the benefits are affected." *See also* Common Chapters Manual Chapter 710.14(b) ("[n]otice shall be mailed at least 13 days before the effective date of any action or decision which may be adverse to the applicant or recipient.").

When the system generates such a notice, the system changes the status of the recipient's case from pending to closed. Testimony established that as a standard Department practice, the notices are then printed and mailed to benefit recipients by the Department's central office instead of the local Department office handling the recipient's case. Mr. Hammer received the January 17, 2025, notice after he complied with the Department's request for additional information.

As a result, on January 24, 2025, Mr. Hammer submitted a written request to the Department for a fair hearing to protest the termination of his SNAP benefits, which was received by the BOR on January 27, 2025. Shortly thereafter, the Department reviewed Mr. Hammer's additional information and issued a letter dated January 27, 2025, informing Mr. Hammer that his SNAP benefits were approved for his household, effective February 1, 2025. Although approved, Mr. Hammer's benefits were reduced after including his girlfriend's income as part of his household income. Mr. Hammer learned of the SNAP approval on January 27, 2025, and at that time, he contacted the Department and verbally withdrew his hearing request. According to the record, a physical copy of the January 27, 2025, letter was auto-generated by the Department's system and automatically printed at the Department's central office that same day for mailing. However, it is undisputed that, for unknown reasons, the letter was not postmarked for mailing until February 3, 2025. Nevertheless, in response to Mr. Hammer's verbal withdrawal of his hearing request, the Department sent Mr. Hammer a letter dated January 29, 2025, which confirmed his withdrawal of the hearing request and informed Mr. Hammer that he had thirteen days to rescind the withdrawal and reinstate the hearing.

On February 2, 2025, Mr. Hammer informed the Department that he was reinstating his hearing request and requesting that his SNAP benefits continue pending the outcome of the hearing. *See* 7 C.F.R. 273.15(k) (2017). The BOR issued a scheduling order to the parties, which, among other things, set the matter for hearing on February 19, 2025, and required the parties to provide all documents intended to be introduced at the hearing to the BOR's hearing officer and the opposing party no later than five business days prior to the hearing. Mr. Hammer contends he timely submitted all his documents but received no documents from the Department at any time prior to the hearing. He further contends that on February 14, 2025 (the Friday before the administrative hearing), he provided Carla Marsh, his local Department economic services worker, with a written request for a copy of his entire Department file. At the administrative hearing, Ms. Marsh explained that she did not respond to his request because the preceding Monday (February 17th) was a legal holiday and, thus, the request was not received until the next day and that given Mr. Hammer's comprehensive request and the size of his case file, there was not adequate time to prepare a copy prior to the hearing.[5] Notably, Mr. Hammer did not seek to continue the

_____

[5] Upon inquiry from the hearing officer, Mr. Hammer could not identify the specific documents he was seeking. Ultimately, however, the hearing was briefly held in recess for

3

administrative hearing or otherwise to object to proceeding with his fair hearing for any reason.

The administrative hearing was held before the BOR's hearing officer on February 19, 2025. Ms. Marsh was the Department's lone representative. At the outset of the hearing, the parties agreed that in accordance with the scheduling order, the only issue to be heard was the merits of the Department's January 17, 2025, termination notice.[6] During the administrative hearing, Mr. Hammer focused his protest on what he perceived to be irregularities with Department procedure.

For example, Mr. Hammer claims that even though he provided the Department with the additional information it requested, he never received the January 10, 2025, Verification Checklist form. Ms. Marsh explained that the checklist was also generated by the Department's system based upon information the Department needed to complete the eligibility review based upon responses he provided during his telephonic interview with the Department on January 9, 2025.[7] The checklist was system generated and mailed by the central office to Mr. Hammer's address on file.

He also alleged that the January 27, 2025, letter had been fabricated and objected to its admission into evidence. According to Mr. Hammer, it was not possible for the letter to have been issued on January 27, 2025, and not mailed until February 3, 2025, when the January 17, 2025, notice letter was postmarked the same day. Ms. Marsh explained that the date on the letter represents the date on which it was created by the case management system, and that the letter was printed and mailed through the central office. The hearing officer admitted the letter into evidence and noted Mr. Hammer's objection.

Next, Mr. Hammer contended that because he did not receive the January 27, 2025, letter until February 3, 2025, the Department failed to comply with the governing federal regulation, 7 C.F.R. § 273.13(a)(1), because he did not receive notice that his benefits were

_____

Ms. Marsh to obtain a copy of the January 10, 2025, Verification Checklist, and the January 27, 2025, letter.

[6] The scheduling order stated: "This matter is pending on [Mr. Hammer]'s protest to the decision by the Department of Human Services to terminate [SNAP] benefits as outlined in the Notice dated January 17, 2025."

[7] At the time of the interview, a different economic services worker was assigned to Mr. Hammer's case before it was transferred to Ms. Marsh and then to a different worker at the local Department office. However, Ms. Marsh had firsthand knowledge of the events surrounding the prior worker's efforts on Mr. Hammer's eligibility review, which included approving Mr. Hammer's benefits as reflected in the January 27, 2025, letter.

renewed at a reduction until after the scheduled allotment of his SNAP benefits on February 1, 2025. On this issue, Ms. Marsh explained that although Mr. Hammer's benefits were going to cease at the end of January, the benefits were renewed as of the January 27, 2025, letter, and as a result, Mr. Hammer was timely allotted his SNAP benefits as scheduled, just at a reduced amount based upon the changes to his household income.[8]

Lastly, as his closing argument, Mr. Hammer asserted that his primary argument is that he never received anything in writing from the Department documenting the changes that occurred in his benefits and written notices were not properly given. Similarly, he asserted that the January 17, 2025, notice of termination inaccurately states that he failed to complete eligibility review when, in fact, the process was ongoing due to the additional information requested by the Department. He further contended that it was obvious from the record that the January 27, 2025, letter was not created until February 3, 2025, when it was postmarked, and that the Department only created the letter and accompanying documents on February 3, 2025, because of his February 2, 2025, correspondence rescinding the withdrawal of his hearing request.[9]

The hearing officer issued the BOR's decision on February 27, 2025, which upheld the Department's issuance of the January 17, 2025, notice of termination to Mr. Hammer. The BOR's order set forth that the Department had complied with its policy and federal law by conducting the periodic eligibility review of Mr. Hammer's SNAP benefits, and that those authorities clearly state that the Department must close benefits for a recipient who does not complete the eligibility review. The testimony of Ms. Marsh established that because Mr. Hammer's eligibility review was pending on January 17, 2025, the Department's case management system auto-generated the termination notice with standard language indicating that his SNAP benefits were being closed because he had not completed his eligibility review, and that the system changed Mr. Hammer's case status from pending to closed. However, it was not disputed that at the time of the notice, Mr. Hammer was in the process of complying with the Department's request for additional

---

[8] Reviewing the transcript of the administrative hearing, it appears that based upon a colloquy between the parties and the hearing officer, the Department informally agreed to restore Mr. Hammer's benefits to the amount he previously received prior to the reduction, pending the hearing officer's written decision. This is not formally addressed in the order on appeal; nevertheless, it has no bearing on our decision herein.

[9] Mr. Hammer also attempted to raise arguments regarding his girlfriend's SNAP account and her classification as part of his household during this hearing. However, the hearing officer did not permit the same, but rather, informed Mr. Hammer that this hearing only related to his SNAP account, and that his girlfriend would have to file a separate proceeding to protest her grievances regarding the Department's handling of her SNAP account.

information to complete its review of Mr. Hammer's benefits, nor was it disputed that Mr. Hammer's review process was ultimately completed, his SNAP benefits were approved, and his case was reopened prior to the end of January 2025 when the termination was to take effect.

The order also found that while Mr. Hammer claims he did not receive the January 10, 2025, Verification Checklist form, there was no evidence that the mailing was returned to the Department, and that this issue was seemingly moot because Mr. Hammer provided the requested information and was subsequently approved for benefits, which was set forth in the January 27, 2025, letter. The BOR also found the mailing of the January 27, 2025, letter on February 3, 2025, did not violate Department policy because the letter informed Mr. Hammer that his benefits redetermination process was complete and approved his benefits at a reduced amount, and that the benefit reduction was not an adverse action from which the Department was required to give advanced notice.[10] It was further determined that advance notice was not required pursuant to 7 C.F.R. § 273.13(a)(3).[11] The order also

---

[10] West Virginia Income Maintenance Manual Chapter 9.3.1.B states: "The following adverse actions do not require advance notice . . . <u>For SNAP only</u>: when the benefit is terminated or reduced as a result of a redetermination." *See also* Common Chapters Manual § 710.14(c)(3) (SNAP benefits terminated or reduced upon redetermination are not an adverse action subject to the thirteen-day notice requirement).

[11] 7 C.F.R. § 273.13(a)(3) provides:

The State agency *may* notify a household that its benefits will be reduced or terminated, no later than the date the household receives, or would have received, its allotment, if the following conditions are met:

(i) The household reports the information which results in the reduction or termination.
(ii) The reported information is in writing and signed by the household.
(iii) The State agency can determine the household's allotment or ineligibility based solely on the information provided by the household as required in paragraph (a)(3)(ii) of this section.
(iv) The household retains its right to a fair hearing as allowed in § 273.15.
(v) The household retains its right to continued benefits if the fair hearing is requested within the time period set by the State agency in accordance with § 273.13(a)(1).
(vi) The State agency continues the household's previous benefit level, if required, within five working days of the household's request for a fair hearing.

(emphasis added).

made an express finding that Mr. Hammer stated on the record that he was not challenging the Department's reduction of his SNAP benefits in this proceeding.

The BOR's order ultimately concluded that the Department took proper action to terminate Mr. Hammer's benefits on January 17, 2025, and that the Department correctly reinstated Mr. Hammer's benefits on January 27, 2025, after receiving Mr. Hammer's additional information and completing his eligibility review. This appeal followed.

Our standard of review is as follows:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the agency;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g) (2021); *accord* W. Va. Code § 16B-2-2(c) (2024) (specifying that the provisions of West Virginia Code §§ 29A-5-1 to -5 apply to this Court's appellate review of BOR decisions).

On appeal, Mr. Hammer raises four assignments of error, which reiterate some of the arguments he made below, as well as raising new arguments. We will address them in turn.

First, Mr. Hammer argues that his due process rights were violated when the January 17, 2025, termination notice was issued because the Department informed him that he had until January 19, 2025, to respond. Thus, he was not afforded a full ten days to respond to either the Department request for more information, in violation of Section 1.4.8 of the West Virginia Income Maintenance Manual ("IMM") ("Additional information requested from the applicant is due 10 calendar days from the date of the . . . verification checklist") and 7 C.F.R. § 273.14(b)(4) (2021) ("The household must be allowed a minimum of 10 days to provide required verification information. . . ."). We are not persuaded by this argument.

Here, the facts of this case establish that the January 17, 2025, termination notice was computer-generated, contained standard language, and was issued to comply with the thirteen-day advance adverse notice requirements under Department policy. This action was not the result of human error, and although it resulted in the Department's case management system changing the status of Mr. Hammer's case from pending to closed, this was short-lived. In fact, it is uncontroverted the Department completed the eligibility review and awarded Mr. Hammer SNAP benefits prior to his next scheduled allotment in February and, thus, his benefits continued without interruption. As such, we conclude that Mr. Hammer suffered no actual prejudice from the Department's overlapping bureaucratic processes in this case, and that under the facts of this case, any technical violations of Department policy on this issue constitute harmless error, at best.

Next, Mr. Hammer argues that the BOR erred by finding that the Department properly notified him that his benefits were being reduced. Specifically, Mr. Hammer contends that this is established by the January 27, 2025, letter not being postmarked until February 3, 2025. According to Mr. Hammer, the reduction of his benefits constitutes an adverse action requiring the thirteen-day advance notice under IMM Chapters 9.3.1 and 9.3.1.A. We disagree with Mr. Hammer on this issue. The plain language of IMM Chapter 9.3.1 states "[a] client must receive advance notice in all situations involving adverse actions except those described in [Chapter 9.3.1.A]." To that end, IMM Chapter 9.3.1.A states that decreases in SNAP benefits "are not adverse actions [requiring advance notice under IMM Chapter 9.3.1], but do require client notification[.]" Further, IMM Chapter 9.3.1.B expressly excludes SNAP benefits "terminated or reduced as a result of a redetermination" from the advance notice requirements for adverse actions. Here, the record establishes that the January 27, 2025, letter and reduction of SNAP benefits was a result of a benefit redetermination by the Department. As such, there was no advance notice requirement for this Department action. Instead, Department policy simply requires that Mr. Hammer be notified of the change, and there is no dispute that the January 27, 2025, letter notified Mr. Hammer of the reduction in his SNAP benefits. Therefore, Mr. Hammer is not entitled to relief on this assignment of error.

In his final two assignments of error, Mr. Hammer contends that the hearing officer failed to consider whether the Department erred when it required him to produce documentation evidencing his self-employment income and expenses for the past six months. He also contends that the Department erred when it failed to provide him documentation at least five days prior to the hearing under the BOR's scheduling order and when it refused to honor his request for a copy of his entire case file. We find no merit in either argument. Notably, as evidenced by the BOR's order and supported by this Court's review of the hearing transcript, Mr. Hammer expressly stated that he was not challenging the Department's benefit calculation in this proceeding; moreover, although he noted the scheduling order and case file request issues at the administrative hearing, at no time did Mr. Hammer lodge an objection to proceeding with the hearing or otherwise seek a continuance of the hearing. *See Johnson v. State Dep't of Motor Vehicles*, 173 W. Va. 565,

571, 318 S.E.2d 616, 622 (1984) ("As a general rule, nonjurisdictional issues not objected to at trial are deemed waived and may not be raised for the first time on appeal."); *see also* Syl. Pt. 3, in part, *Hudgins v. Crowder & Freeman, Inc.*, 156 W. Va. 111, 191 S.E.2d 443 (1972) (holding "what does not so appear [in the record,] does not exist in law."). Therefore, Mr. Hammer has waived these issues for the purposes of appeal, and we decline to consider the same.

Based on the foregoing, we conclude that Mr. Hammer has failed to carry his burden of establishing that his substantial rights were prejudiced by the Department's January 17, 2025, administrative closure of his SNAP benefits case. Thus, we find no error and affirm the BOR's February 27, 2025, decision.

Accordingly, we affirm.

Affirmed.

**ISSUED:** December 4, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White